IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TERRELL L. THOMPSON, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-15-878 |
| WARDEN RICHARD E. MILLER, et al., | * | |
| Respondents. | * | |

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Petitioner Terrell L. Thompson's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1). The Petition is ripe, and no hearing is necessary. See R. Govern. § 2254 Cases U.S. Dist. Ct. 8(a); 28 U.S.C. § 2254(e)(2) (2018). For the reasons set forth below, the Court will dismiss the Amended Petition and decline to issue a Certificate of Appealability.

### I. BACKGROUND

On July 25, 2008, Thompson was indicted in the Circuit Court for Charles County, Maryland for first-degree murder, attempted first-degree murder, and various related firearm offenses and assault counts arising from events that took place on June 28, 2008. (Resp. Am. Pet. ["2d Answer"] Ex. 1 ["State Court Record"] at 6, 26–27, ECF No. 33-1).[1] After a three-day trial in September 2009, a jury convicted Thompson of first-degree murder, attempted first-degree murder, first-degree assault, and several firearm offenses.

---

[1] Citations to the State Court Record refer to the page numbers assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

(Mem. L. Supp. Am. Pet. Ex. 3 ["Excerpts from Trial & Sentencing Trs."] at 37–38, ECF No. 30-3). On December 29, 2009, Thompson was sentenced to life imprisonment with an additional fifty years to be served consecutively. (Id. at 42).

At trial, evidence was presented by the State to establish the following. On June 28, 2008, between 12:30 a.m. and 2:00 a.m., Thompson was at the Elk's Lodge in Newburg, Maryland. (Trial Tr. vol. I at 176:10–15, ECF No. 33-2). Around closing time, people began to leave the building and a crowd gathered outside in the parking lot. (Trial Tr. vol. II at 72:6–10, ECF No. 33-3). As the crowd gathered, an altercation began between Thompson and Calvin Ross. (Trial Tr. vol. I at 177:9–12). Witnesses presented several conflicting accounts as to who initiated the altercation. (Id. at 154:1–155:6, 185:10–20, 194:14–20). At some point during the fight, someone in the crowd fired multiple gun shots into the air. (Id. at 187:2–14). Michael Beverly, a bystander, eventually pulled Ross off Thompson and walked away with Ross to calm him down. (Id. at 145:6–9). Thompson then took the gun from the individual who had fired the shots into the air and walked over to Beverly and Ross. (Id. at 145:11–147:5). Thompson reached over Beverly's shoulder to fire multiple shots into Ross, and then fired at Beverly, killing him. (Id. at 202:15–204:19). Ross sustained injuries but survived. Thompson immediately left the scene and was ultimately arrested several months later on December 2, 2008. (Id. at 179:22; Trial Tr. vol. II at 35:22–36:2).

After his sentencing, Thompson brought a series of challenges to his conviction. On direct appeal, the Maryland Court of Special Appeals affirmed his conviction, and the Maryland Court of Appeals denied Thompson's petition for a writ of certiorari. (State

Court Record at 48–49). On April 9, 2012, Thompson filed a petition for post-conviction relief, raising several arguments, including ineffective assistance of both trial and appellate counsel. (Mem. L. Supp. Am. Pet. Ex. 2 ["Post-Conviction Cir. Ct. Op."] at 1–8, ECF No. 30-2). After a hearing, the Charles County Circuit Court denied the post-conviction petition on December 16, 2013. (Id. at 1, 8). Thompson then filed an application for leave to appeal the decision, which the Court of Special Appeals summarily denied. Thompson v. State, No. 2652, Sept. Term 2013 (Md.Ct.Spec.App. Sept. 30, 2014).

On July 10, 2015, Thompson filed a motion to reopen his post-conviction proceedings, presenting two grounds for relief, including an ineffective assistance of counsel claim based on evidence that trial counsel allegedly failed to inform Thompson of a plea offer. After the Circuit Court initially denied the motion without a hearing, the Court of Special Appeals remanded the case to the Circuit Court with an order to conduct an evidentiary hearing. (Mot. Ext. Time Ex. 2 ["June 23, 2018 Md.Ct.Spec.App. Order"] at 1, ECF No. 22-2). On December 13, 2017, the Circuit Court held a hearing on Thompson's motion to reopen, which the court denied. (Mot. Reopen Hr'g Tr. at 55:13–15, ECF No. 22-1). Thompson filed an application for leave to appeal this second denial of the motion to reopen, which was denied by the Court of Special Appeals on April 4, 2018. Thompson v. State, No. 2187, Sept. Term 2017 (Md.Ct.Spec.App. Apr. 4, 2018).

On March 26, 2015, Thompson filed his federal Petition for Writ of Habeas Corpus in this Court pursuant to 28 U.S.C. § 2254. (ECF No. 1). In his initial Petition, Thompson raised several grounds for relief, the majority of which concerned the alleged ineffective assistance of counsel throughout his trial and appeal. In their Answer, Respondents argued

3

that Thompson's claims based on the alleged failure of trial counsel to communicate a plea offer and the ineffective assistance of appellate counsel were not properly raised and exhausted in state court. (Answer at 10, ECF No. 5). Because Thompson asserted that these claims were based upon newly-discovered evidence, the Court ordered a stay of this case pending exhaustion of those claims. (Jul. 13, 2015 Order at 5, ECF No. 8). The Court lifted the stay after the state court denied Thompson's motion to reopen his post-conviction proceedings, thereby exhausting his remaining claims. (Sept. 5, 2018 Order at 1, ECF No. 29).

Thompson, proceeding with counsel, then filed an Amended Petition, withdrawing many of his previously raised grounds for relief. (See ECF Nos. 26, 30). Thompson's two remaining claims assert ineffective assistance of counsel based on trial counsel's failure to request a jury instruction for voluntary manslaughter and failure to inform Thompson of a plea offer. (Am. Pet. at 5, ECF No. 26). On January 7, 2019, Respondents filed an Answer to the Amended Petition, arguing that both of Thompson's claims should be dismissed on the merits. (ECF No. 33). Thompson filed a Reply on February 22, 2019. (ECF No. 36).

## II. DISCUSSION

### A. Standard of Review

A federal district court may only grant a habeas petition for a person who is in custody pursuant to the judgment of a state court if the state court decision violates the Constitution or laws of the United States. 28 U.S.C. § 2254(a) (2018). A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of,

4

clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the first prong, a state court adjudication is "contrary to" clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000). As for the "unreasonable application" analysis, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). In other words, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Williams, 529 U.S. at 411). Rather, "that application must be 'objectively reasonable.'" Id. (quoting Williams, 529 U.S. at 409).

Under the second prong of § 2254(d), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). Indeed, "even if '[r]easonable minds reviewing the record might disagree' about the finding in question," that does not suffice for a federal court to conclude that the state court decision was based

5

on an unreasonable determination of the facts. Id. (alteration in original) (quoting Rice v. Collins, 546 U.S. 333, 341–42 (2006)). Further, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

**B.     Analysis**

In his Amended Petition, Thompson argues that he received constitutionally ineffective assistance from his trial counsel. Ineffective assistance of counsel claims are grounded in the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. This guaranteed assistance of counsel must be "effective." Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To establish ineffective assistance of counsel, a petitioner must show both: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced his defense. Id. at 687.

To satisfy the first prong of the Strickland standard, a petitioner must demonstrate that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." Id. at 687 (citation omitted). The standard for assessing such competence is "highly deferential" and includes a "strong presumption that counsel's

6

conduct falls within a wide range of reasonable professional assistance." Id. at 669. "The lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" Buck v. Davis, 137 S.Ct. 759, 775 (2017) (quoting Strickland, 466 U.S. at 690).

The second prong requires the court to consider whether counsel's errors were so serious that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 690–94. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Id. at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. The Court need not appraise the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. See id. at 697.

A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and the state appellate courts reviewing their performance. See 28 U.S.C. § 2254(d)(1). A petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others

reflects trial tactics rather than 'sheer neglect.'" Harrington, 562 U.S. at 109 (quoting Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam)). "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. at 105 (citations omitted); see also Cullen v. Pinholster, 563 U.S. 170, 190 (2011). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105.

### 1. Jury Instruction

Thompson first asserts that he received ineffective assistance when his trial counsel failed to request a jury instruction for voluntary manslaughter on provocation. Specifically, Thompson argues he was entitled to a hot-blooded manslaughter instruction as to both the first-degree murder charge for the death of Beverly and the attempted first-degree murder charge with respect to Ross.

Under Maryland law, "[k]illing in hot blooded response to legally adequate provocation is a mitigating circumstance," which "reduces the level of guilt from murder to manslaughter." Maryland Criminal Pattern Jury Instructions ("MPJI-Cr.") 4:17.4. For a jury to find this mitigating circumstance exists, five factors must be present:

   (1) the defendant reacted to something in a hot[-]blooded rage, that is, the defendant actually became enraged;

   (2) the rage was caused by something the law recognizes as legally adequate provocation, that is, something that would cause a reasonable person to become enraged enough to kill or inflict serious bodily harm . . . ;

   (3) the defendant was still enraged when [he] killed the victim, that is, the defendant's rage had not cooled by the time of the killing;

(4) there was not enough time between the provocation and the killing for a reasonable person's rage to cool; and

(5) the victim was the person who provoked the rage.

Id.; see also State v. Rich, 3 A.3d 1210, 1219 (Md. 2010). "Mutual combat" has been recognized as legally adequate provocation where "persons enter into angry and unlawful combat with a mutual intent to fight." Rich, 3 A.3d at 1219 (quoting Sims v. State, 573 A.2d 1317, 1322 (Md. 1990)). In Maryland, a criminal defendant is entitled to a requested jury instruction so long as the defendant produces "some evidence" to support the instruction. Bazzle v. State, 45 A.3d 166, 171 (Md. 2012); see also Marquardt v. State, 882 A.2d 900, 921 (Md.Ct.Spec.App. 2005) ("There must be 'some evidence,' to support each element of the defense's legal theory before the requested instruction is warranted.") (citation omitted).

At the hearing on Thompson's state post-conviction petition, Thompson's trial counsel explained that he did not request the hot-blooded manslaughter instruction because he did not believe "there was any adequate provocation to justify the shooting" and "[i]t appeared from the evidence that Mr. Thompson was the aggressor from the very inception, according to the witness." (Post-Conviction Hr'g Tr. at 26:10–18, ECF No. 33-6). The State argued that there was no evidence, direct or circumstantial, that Thompson was subjectively enraged, which is the first element of the provocation defense. (Id. at 66:25–67:9). The State also asserted that the evidence established there was time to cool between Thompson's initial fight with Ross and the shooting. (Id. at 68:10–25). Finally, the State argued that even if there had been sufficient evidence for an instruction on the attempted

9

murder of Ross, the provocation defense did not apply to Beverly's murder because the evidence depicted Beverly as the "peacekeeper" who "never took any aggressive actions toward Thompson." (Id. at 69:13–21) Thus, the State contended there was no evidence to support the final element of the provocation defense, which requires the victim to be the person who provoked the rage.

In a written opinion denying Thompson's post-conviction petition, the state court expressly rejected the applicability of the provocation instruction for the murder of Beverly. The state court explained that the "provocation must have come at the instance of the homicide victim before instigation is recognized." (State Court Record at 66). Finding "not a scintilla of evidence" that Beverly did anything other than try to break up the fight, the state court found Thompson was not entitled to such a jury instruction. (Id.). Accordingly, the state court found no error in the failure of Thompson's trial counsel to request the provocation instruction. (Id.). With respect to the attempted murder of Ross, the state court did not explicitly address this claim. However, at the end of its opinion, the state court summarily stated that "the petitioner's several contentions are without merits," apparently capturing any claim not individually addressed. (Id. at 67).

Thompson asserts that the state court's decision was an unreasonable application of clearly established federal law. Counsel's failure to request a jury instruction can form the basis of an ineffective assistance claim. Lee v. Clarke, 781 F.3d 114, 129 (4th Cir. 2015), as amended (Apr. 15, 2015). Such claims are analyzed under the two-prong Strickland test, requiring a court to find that counsel's performance was deficient and that the deficiency prejudiced the defendant. Id. at 122. Regarding the prejudice prong, a court

must specifically ask: "(1) whether the instruction, if requested, should have been given; and (2) if the instruction had been given, was there a reasonable probability that the outcome of the proceedings would have been different." Id. at 125 (quoting United States v. Luck, 611 F.3d 183, 189 (4th Cir. 2010)).

Thompson primarily relies on the United States Court of Appeals for the Fourth Circuit's decision in Lee v. Clarke to support his claim. In Lee, the habeas petitioner raised an ineffective assistance claim based on his trial counsel's failure to request a heat-of-passion instruction in his first-degree murder prosecution. 781 F.3d at 123. Undisputed testimony at trial revealed that the victim initiated a fight with Lee, punching him in the face multiple times before Lee stabbed the victim. Id. While the Virginia trial court provided a jury instruction on the difference between murder and manslaughter, the jury did not receive an instruction defining heat of passion. Id. Although there was no dispute that Lee was in fact entitled to a heat-of-passion instruction, the state habeas court rejected Lee's ineffective assistance claim, finding no prejudice. Id. at 122. On appeal, the Fourth Circuit found the state court's decision to be an unreasonable application of Strickland. As to the deficiency prong, the Fourth Circuit emphasized that "Lee's trial counsel had no strategic reason" for failing to request the instruction and that "it was error to fail to do so in any event under the facts of the case." Id. at 125. As to prejudice, the court noted that Lee was in fact entitled to the heat of passion instruction under Virginia law. Id. Finally, the Fourth Circuit found that the instruction had a reasonable probability to alter the outcome of the trial, given the evidence established the victim had struck Lee first in "an attack [that] would engender anger, rage, fear or similar emotions." Id. at 126. Accordingly,

11

the court granted Lee habeas relief.

Respondents argue that, unlike the Fourth Circuit's decision in Lee, which turned primarily on the prejudice prong, Thompson's claim fails on the deficiency prong of Strickland. By contrast to Lee, where there was no real dispute that the petitioner was entitled to a heat-of-passion instruction, Respondents contend Thompson did not even meet the relatively low threshold of "some evidence" necessary to receive a hot-blooded manslaughter instruction. Thus, Respondents assert that the state post-conviction court's finding that no instruction was warranted is a reasonable application of law.

As a preliminary matter, with respect to the attempted murder of Ross, the Court notes that it is of no consequence that the state court did not explain its reasoning in denying the application of the hot-blooded instruction to this offense. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Harrington, 562 U.S. at 98. Under such circumstances, a "court must determine what arguments or theories . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. at 102.

Respondents assert Thompson could not satisfy the first element of the hot-blooded instruction for both the murder and attempted murder charges because there was no evidence that Thompson was actually enraged. While evidence of a defendant's facial expressions or speech may provide sufficient evidence for a hot-blooded instruction, "under some circumstances only the hot-blooded killer can attest" to state of mind. Sims,

573 A.2d at 1323. At the hearing on Thompson's state post-conviction petition, Thompson's trial attorney testified that his client never said he acted in a "fit of passion" at the time he shot Ross and Beverly. (Post-Conviction Hr'g Tr. at 23:5–9). The evidence at trial was similarly lacking to support Thompson's subjective rage. One witness who was with Thompson at Elk's Lodge recalled him pacing back and forth with a gun after she heard shots fired. (State Court Record at 188). However, when asked if Thompson seemed upset, the witness replied that "[h]e didn't seem upset really." (Id. at 190).

Moreover, with respect to the murder of Beverly, Respondents maintain there was no evidence at trial that Beverly provoked Thompson's alleged rage. Multiple witnesses testified to Beverly's role as a bystander to the fight between Thompson and Ross. (See Trial Tr. vol. I at 156:2–17, 196:7–197:2). Beverly intervened to pull Ross off Thompson and then attempted to move Ross away from the fight to calm down. (See id.; Trial Tr. vol. II at 10:15–16). Thompson responds that "some evidence" at trial established that Beverly was the person who provoked Thompson's rage because one witness stated that Beverly was throwing punches at the time he was shot. (Trial Tr. vol. I at 210:19–211:2). This alleged provocation from Beverly, however, came after he had broken up the fight between Thompson and Ross, which Thompson himself identifies as the source of his rage. Further, the witness explained that Beverly threw this punch as he "was trying to push [Thompson] away." (Id. at 217:7–11). Rather than provoking Thompson's rage, which under Thompson's own theory was incited by his fight with Ross, the only evidence of aggression from Beverly came as he was attempting to get away from Thompson to avoid being shot.

Under clearly established federal law, failing to request a jury instruction to which

a defendant is not entitled does not amount to ineffective assistance of counsel. Lee, 781 F.3d at 125. Rather than request an instruction trial counsel did not believe was supported by the evidence, counsel's strategy was to reduce Thompson's first-degree charges to second-degree by focusing on the absence of premeditation. (Post-Conviction Hearing Tr. at 23:13–15; see also Trial Tr. vol. III at 98:17–99:1). Based on the lack of evidence to support multiple elements of the provocation defense, there is a "reasonable argument that counsel satisfied Strickland's deferential standard" with this strategy. Harrington, 562 U.S. at 105. Under the similarly deferential standard of federal habeas review, the state court's finding of no error on the part of trial counsel was a reasonable application of the law. Accordingly, the Court will deny the Amended Petition as to Thompson's jury instruction claim.

    **2.    Plea Offer**

Thompson next claims that trial counsel provided ineffective assistance by failing to inform Thompson of a plea offer from the State. Thompson contends he first learned of a plea offer in 2014, after his direct appeal and the denial of his state post-conviction petition, when he received his case file from his trial counsel. (Mot. Reopen Hr'g Tr. at 4:24–5:5). In contrast to Thompson's sentence of life plus fifty years, the plea offer would have resulted in a sentence of forty years imprisonment. (Id. at 5:2–5).

The Sixth Amendment right to counsel "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012). Thus, defendants have the same right "to the effective assistance of competent counsel" during plea negotiations as they do at trial, and the two-part Strickland test applies to such claims. Id. (citation omitted). As "defense

counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," failure to do so renders counsel's performance deficient. Missouri v. Frye, 566 U.S. 134, 145 (2012). To establish prejudice in the context of plea offers, defendants "must demonstrate a reasonable probability that (1) 'they would have accepted the earlier plea offer had they been afforded effective assistance of counsel,' and (2) 'the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law.'" Merzbacher v. Shearin, 706 F.3d 356, 366 (4th Cir. 2013) (quoting Frye, 566 U.S. at 147).

Thompson raised this claim for the first time in state court in a motion to reopen his post-conviction proceedings. Under Maryland law, an inmate is generally entitled to only one state petition for post-conviction relief. Md. Code Ann., Crim. Proc. § 7-103(a). However, a state court may reopen a post-conviction proceeding if the court determines "the action is in the interests of justice." Id. § 7-104. Thompson asserted that newly-discovered evidence, which he did not have access to at the time of his earlier petition, revealed the existence of a plea offer in his case. At the hearing on Thompson's motion to reopen, Thompson testified that his trial counsel never informed him of the plea offer and that he would have accepted the plea had he known of its existence. (Mot. Reopen Hr'g Tr. at 14:2–11). Thompson attempted to contact his trial counsel prior to the hearing so that the attorney could testify, but the attorney had retired and could not be located. (Id. at 42:5–14).

In response to Thompson's testimony, the State proffered that if the case were

reopened and Thompson's trial counsel could testify, he "would testify that he did get a last minute plea offer from the State, did present it to Mr. Thompson on the morning of his trial and Mr. Thompson rejected it, stating that he was not interested in pleading to anything." (Id. at 39:13–20). Additionally, the State submitted a note from the State's Attorney's Office case file, written by the prosecutor on the first day of Thompson's 2009 trial, which read: "[Defendant]'s [attorney] says it will be a plea. Plea agreement provided to counsel. Counsel returns and now says trial." (Id. at 40; see also State Court Record at 68).

Considering this evidence, the state court found that Thompson's testimony was not credible. (Mot. Reopen Hr'g Tr. at 54:16). Further, the state court concluded that the prosecutor's note supported a finding that defense counsel had informed Thompson of the plea offer because it "doesn't make sense" for defense counsel to indicate there would be a plea, take the agreement, and then return with news that the trial would proceed, unless Thompson had in fact been informed of the plea offer and turned it down. (Id. at 54:17–25). Moreover, the state court found it unlikely that defense counsel, "an experienced attorney," would take "it upon himself to circumvent Mr. Thompson's wishes or right to make that call." (Id. at 55:5–12). Accordingly, the state court determined it was not in the interests of justice to reopen the case and denied Thompson's motion. (Id. at 13–15).

Thompson argues that the state court's decision amounts to an unreasonable determination of the facts on federal habeas review. Under § 2254, a state court's factual determination is presumed correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Moreover, in reviewing a state court decision, "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Merzbacher, 706 F.3d at 364 (citation omitted). In Merzbacher, the Fourth Circuit found that a habeas petitioner's "self serving assertion that he would have accepted the plea is . . . the type of testimony . . . subject to heavy skepticism." Id. at 367 (internal quotation marks and citation omitted). In finding that the "state court did not act unreasonably in finding Merzbacher not credible when he stated that he would have taken the plea," the Fourth Circuit emphasized that "only the state court had the opportunity to observe the testimony on this critical point." Id. at 368.

As in Merzbacher, the state court had the opportunity to observe Thompson's testimony and determined he was not credible. After making such a credibility determination, and without any other evidence to support Thompson's claim, the state court acted reasonably in denying Thompson's motion. Based on this record, the Court finds Thompson has not met his burden of rebutting the presumption of correctness by clear and convincing evidence and will therefore deny Thompson's ineffective assistance claim as to the plea offer.

C. **Certificate of Appealability**

A district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in habeas cases. R. Govern. § 2254 Cases U.S. Dist. Ct. 11(a). Because the accompanying Order is a final order adverse to the applicant, the Court must issue a certificate of appealability before an appeal can proceed. See 28 U.S.C. § 2253(c)(1) (2018).

A certificate of appealability may issue if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a district court denies a habeas petition on procedural grounds, the petitioner must show that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." Id. at 478. Because Thompson fails to satisfy these standards, the Court declines to issue a certificate of appealability. Thompson may request that the Fourth Circuit issue such a certificate. See Lyons v. Lee, 316 F.3d 528, 532 (4th Cir. 2003).

### III. CONCLUSION

For the foregoing reasons, the Court will DISMISS Thompson's Amended Petition for Writ of Habeas Corpus and will DECLINE to issue a certificate of appealability. The Court will direct the Clerk to CLOSE the case. A separate Order follows.

Entered this 22nd day of January, 2020.

/s/
George L. Russell, III
United States District Judge