IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TERRELL L. THOMPSON, # 360-887, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-15-878 |
| RICHARD E. MILLER, Warden, et al., | * | |
| Respondents. | * | |
| | *** | |

## MEMORANDUM OPINION

THIS MATTER is before the Court upon Petitioner Terrell L. Thompson's Motion for Reconsideration (ECF No. 40).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons explained below, the Motion will be denied.

### I.   BACKGROUND[2]

Thompson filed his federal Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 26, 2015. (ECF No. 1). Thompson filed an Amended Petition on August 31, 2018, and supplemented it on October 9, 2018. (ECF Nos. 26, 30). Thompson's Amended Petition raised two arguments in support of an ineffective assistance of counsel claim: first, for trial counsel's failure to request a jury instruction on provocation; and

---

[1] Thompson's Motion is styled as a "Motion to Alter and Amend Pursuant to Fed.R.Civ.P. 59(e), for Reconsideration of this Court's January 23, 2020 Memorandum ECF # 38 and ECF # 39 Denying Habeas Corpus Relief Pursuant to 28 U.S.C. § 2254." For simplicity, the Court will refer to the filing as a Motion for Reconsideration.

[2] The Court sets forth a thorough recitation of the facts and procedural history in its January 23, 2020 Memorandum Opinion (ECF No. 38).

second, for trial counsel's failure to inform Thompson of a plea offer. On January 23, 2020, the Court issued a Memorandum Opinion and Order rejecting both grounds and dismissing the Petition. (ECF Nos. 38, 39).

On January 31, 2020, Thompson moved for reconsideration on his first ineffective assistance of counsel claim only. (ECF No. 40). On February 6, 2020, the government filed an Opposition. (ECF No. 42). Thompson filed a Reply on March 5, 2020. (ECF No. 45).

## II.    DISCUSSION

### A.    Standard of Review

Thompson brings his Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 59(e).[3] "Federal Rule of Civil Procedure 59(e) permits the district court to reconsider a decision in certain circumstances." Ross v. Early, 899 F.Supp.2d 415, 420 (D.Md. 2012) (citing Fed.R.Civ.P. 56(e)), aff'd, 746 F.3d 546 (4th Cir. 2014). Although the plain language of Rule 59(e) does not provide a particular standard by which a district court should evaluate a motion to alter or amend judgment, the United States Court of

---

[3] The Federal Rules of Civil Procedure do not contain an express provision for a "motion for reconsideration" of a final judgment. Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 470 n.4 (4th Cir.), cert. denied, 565 U.S. 825 (2011). Nonetheless, to avoid elevating form over substance, a motion to reconsider may be construed as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e), or a motion for relief from judgment under Federal Rule of Civil Procedure 60(b). MLC Auto., LLC v. Town of S. Pines, 532 F.3d 269, 278–80 (4th Cir. 2008). Because the Motion for Reconsideration was filed within twenty-eight days of the Court's January 23, 2020 Memorandum Opinion and Order, Rule 59(e) controls. Bolden v. McCabe, Weisberg & Conway, LLC, No. DKC-13-1265, 2014 WL 994066, at *1 n.1 (D.Md. Mar. 13, 2014); see also Fed.R.Civ.P. 59(e) (stating that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment").

Appeals for the Fourth Circuit has clarified "that Rule 59(e) motions can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007) (internal quotation marks and citation omitted); see also U.S. ex rel. Carter v. Halliburton Co., 866 F. 3d 199, 210–11 (4th Cir. 2017), cert. denied, 138 S.Ct. 2674 (June 25, 2018).

As indicated, a district court may amend a judgment under Rule 59(e) to "prevent manifest injustice." Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993). Another purpose of Rule 59(e) is to "permit[ ] a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (quoting Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995)), cert. denied, 525 U.S. 1104 (1999). "Mere disagreement [with a court's ruling] does not support a Rule 59(e) motion." Hutchinson, 994 F.2d at 1082. Indeed, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." Pac. Ins. Co., 148 F.3d at 403 (citation omitted).

**B.   Analysis**

Thompson argues that reconsideration is warranted because the Court's dismissal of his habeas petition was "clearly erroneous." (Mot. Alter & Amend Pursuant Fed. R. Civ. P. 59(e) ["Mot."] at 2, ECF No. 40). Specifically, Thompson contends the Court's "conclusion is contradicted by the facts cited in the Opinion . . . and the Opinion does not

3

apply the low 'some evidence' standard[4] [for] granting a requested jury instruction in Maryland." (Id.).

This criticism is misplaced. On review of Thompson's habeas petition, the Court was not required to make factual findings or apply the "some evidence" standard. Instead, the Court was required to evaluate the post-conviction court's denial of Thompson's ineffective assistance of counsel claim "through the dual lens of the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] standard and the standard set forth by the Supreme Court in [Strickland v. Washington, 466 U.S. 668 (1984)]." Valentino v. Clarke, 972 F.3d 560, 579 (4th Cir. 2020) (quoting Richardson v. Branker, 668 F.3d 128, 144 (4th Cir. 2012)). Notably, when evaluating an ineffective assistance of counsel claim in the context of AEDPA, the Court's review is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). "Thus, '[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" Valentino, 972 F.3d at 580 (internal quotation marks and citation omitted) at 123 (internal quotation marks and citation omitted)). "This double-deference standard effectively cabins our review to determining whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.'" Id. (emphasis added) (internal quotation marks and citation omitted).

---

[4] As discussed in more detail below, Maryland follows the "some evidence" standard for jury instructions, which provides that a defendant is entitled to a jury instruction even if the "claim is overwhelmed by evidence to the contrary" so long as there is "some evidence" to support it. See Dykes v. State, 571 A.2d 1251, 1257 (Md. 1990).

Thompson's habeas claim was three-fold: (1) he was entitled to a jury instruction on the basis of hot-blooded provocation because there was at least "some evidence" to support it; (2) trial counsel performed deficiently by failing to request this instruction, and Thompson was prejudiced by that deficiency; and (3) as a result, the state post-conviction court's denial of his ineffective assistance claim was "erroneous" and "involved an unreasonable application of the law." (Mem. L. Supp. Pet. Writ Habeas Corpus ["Habeas Pet."] at 11, ECF No. 30). Upon its habeas review, the Court found that Thompson's claim could not satisfy the heightened AEDPA standard because he could not show that the post-conviction court's determination was unreasonable. To the extent its prior opinion was not clear, the Court will attempt to rectify any deficiencies here by expanding on its reasoning.

At the outset, although the state post-conviction court did not specifically refer to the Strickland standard in denying Thompson's ineffective assistance claim, this Court was nonetheless required to apply the deferential standard of review. See Valentino, 972 F.3d at 580. Indeed, where "the state court has not specified the precise reasons for its decision, 'the habeas petitioner must show there was no reasonable basis for the state court to deny relief.'" Id. (quoting Harrington v. Richter, 562 U.S. 86, 98 (2011)). In such cases, "[a] state court's decision is unreasonable where it is 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. (quoting Harrington, 562 U.S. at 103). Thus, to succeed on his habeas claim, Thompson needed to show there was no reasonable basis for the post-conviction court to deny Thompson's claim for ineffective assistance of counsel. See Valentino, 972 F.3d at 580.

A criminal defendant seeking a new trial on the ground that counsel was constitutionally ineffective must satisfy the familiar two-pronged test set forth in Strickland. The first prong requires a showing that defense counsel performed deficiently. Id. at 687. "Deficient performance [ ] requires a showing 'that counsel's representation fell below an objective standard of reasonableness,' as measured by 'prevailing professional norms' and in light of 'all the circumstances' of the representation." Owens, 967 F.3d at 412 (quoting Strickland, 466 U.S. at 688). Additionally, when evaluating counsel's performance under Strickland, the reviewing court must begin with the "strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgement." Valentino, 972 F.3d at 581 (internal quotation marks and citation omitted). This requires a court to not only "give the attorneys the benefit of the doubt, but [also] affirmatively entertain the range of possible reasons that [Thompson's] counsel may have had for proceeding as [he] did." Id. (first and third alterations in original) (quoting Cullen, 563 U.S. at 196) (internal quotation marks and citations omitted); see also Harrington, 562 U.S. at 110 ("Strickland . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."); United States v. Vyner, 846 F.3d 1224, 1227 (D.C. Cir. 2017) ("[T]he presumption may only be rebutted through a showing that no sound strategy . . . could have supported the conduct." (internal quotation marks and citations omitted)). Then, the court must ask whether the defendant "has overcome this presumption by showing that no fair-minded jurist could find one of those reasons to be sound trial strategy." Valentino, 972 F.3d at 581 (citing 28 U.S.C.

6

§ 2254(d)); see also Harrington, 562 U.S. at 105 ("The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.").

At the post-conviction proceedings, Thompson's trial counsel explained that he did not request a jury instruction for the provocation defense because he did not believe there was adequate evidence in the record to support it. (See Post-Conviction Hrg. Tr. at 25:5–9, ECF No. 33-6). When asked to elaborate, counsel explained:

> [T]he problem, as I recall at the time, was there was an initial contact between one of the victims and the Defendant. And at some point in time, there were shots fired by a third person in the crowd.
>
> The Defendant, as I recall, walked over to that individual and secured the weapon that that individual had discharged, presumably. And, and then walked across the parking lot at the Elk's Lodge toward a side door that was locked, apparently. It was not open. This was at closing time. Everyone had already left, as I recall.
>
> Where Mr. Beverly was acting, I suppose you might say, as a Good Samaritan or friend, and was in front of Mr. Ross. And I — The facts seem to suggest that he was trying to prevent him from being shot. Because Mr. Thompson had walked across the parking lot, had the gun, reached over, as I recall, Mr. Beverly, shot Mr. Ross, he was not the individual who died, and then at some point, Mr. Beverly turned, as I recall, to walk away and was shot in the abdomen.
>
> So I didn't see that there was any adequate provocation to justify the shooting, whatsoever. It appeared from the evidence that Mr. Thompson was the aggressor from the very inception, according to the witness. But regardless, there was not any, I think, sufficient provocation to obtain a firearm and go over and shoot either one of the individuals.

(Id. at 25:15–26:16). Trial counsel also testified that, although he did not think the evidence was sufficient to establish the provocation defense, he argued in his closing argument that

7

the charges should be reduced from first-degree to second-degree based upon the lack of premeditation. (Id. at 36:9–22).

In light of trial counsel's testimony, it cannot be said that the post-conviction court's denial of Thompson's ineffective assistance claim was unreasonable. In evaluating counsel's performance, the post-conviction court was required to apply a "highly deferential" level of scrutiny; in other words, "to avoid the 'distorting effects of hindsight,'" the court was required to "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Yarbrough v. Johnson, 520 F.3d 329, 337 (4th Cir. 2008) (quoting Strickland, 466 U.S. at 689). Given trial counsel's explanation for why he declined to request the provocation instruction, the post-conviction court could have reasonably found that the attorney's decision was a valid exercise of his professional judgment. Although Thompson argues that trial counsel's conclusion about the insufficiency of the evidence demonstrates the attorney's incompetence and unfamiliarity with the record, this argument is misplaced—simply put, the Court's role here is to review the state court's judgment, not to independently assess the performance of trial counsel.

Finally, although Thompson argued in his habeas petition that the Fourth Circuit's decision in Lee v. Clark, 781 F.3d 114 (4th Cir. 2015), was determinative of ineffective assistance of counsel claim, the facts in Lee are distinguishable from those here. Indeed, unlike the attorney in Lee, who admitted that he had "no strategic reason for the omission of the instruction" on the heat of passion defense to manslaughter, id. at 124–25, Thompson's trial counsel testified that he considered requesting the provocation jury

instruction but did not do so because, in his professional judgment, the instruction was not warranted. Accordingly, the Court cannot say that there was no reasonable basis for the post-conviction court to deny Thompson relief.

Turning to the second prong of Strickland, a defendant must also prove prejudice—that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; accord Gray v. Branker, 529 F.3d 220, 234 (4th Cir. 2008). "The likelihood of a different result must be substantial, not just conceivable," Harrington, 562 U.S. at 112 (citation omitted), so as to "undermine confidence in the outcome" of the trial, Strickland, 466 U.S. at 694. When reviewing an ineffective assistance claim relating to jury instructions, "the prejudice prong is twofold: (1) whether the instruction, if requested, should have been given; and (2) if the instruction had been given, was there a reasonable probability that the outcome of the proceedings would have been different." Lee, 781 F.3d at 125 (quoting United States v. Luck, 611 F.3d 183, 189 (4th Cir. 2010)).

When determining whether a jury instruction should have been given, state law controls. In Maryland, the defense of provocation, "commonly referred to as hot-blooded response to legally adequate provocation, typically involves passion-creating circumstances, those that provoke action, and therefore, those to which the rule of provocation applies." Christian v. State, 951 A.2d 832, 841 (Md. 2008) (citing Girouard v. State, 583 A.2d 718, 721 (Md. 1991)). The defense of provocation applies the following test: (1) "[t]here must have been adequate provocation"; (2) "[t]he killing must have been in the heat of passion"; (3) "[i]t must have been a sudden heat of passion—that is, the

9

killing must have followed the provocation before there had been a reasonable opportunity for the passion to cool"; and (4) "[t]here must have been a causal connection between the provocation, the passion, and the fatal act." Id. at 842 (quoting Girouard, 583 A.2d at 721). The Maryland Court of Appeals has recognized that the provocation defense may be raised in cases involving "mutual affray," which arises "when persons enter into angry and unlawful combat with a mutual intent to fight." Id. at 842 n.13 (quoting Sims v. State, 573 A.2d 1317, 1322 (Md. 1990)). "The rule of provocation will apply in that situation when, 'as a result of the effect of the combat, the passion of one of the participants is suddenly elevated to the point where he resorts to the use of deadly force to kill the other solely because of an impulsive response to the passion and without time to consider the consequences of his actions.'" Id. (quoting Sims, 573 A.2d at 1322). The provocation defense may also apply to "anything the natural tendency of which is to produce passion in ordinary men and women." Id. at 842 (citing Girouard, 583 A.2d at 721).

The Maryland Pattern Jury Instructions set forth five elements of the provocation defense: (1) the defendant reacted to something in a hot-blooded rage, i.e., the defendant actually became enraged; (2) the rage was caused by something the law recognized as legally adequate provocation, i.e., something that would cause a reasonable person to become enraged enough to kill or inflict serious bodily harm; (3) the defendant was still enraged when he killed the victim, i.e., the defendant's rage had not cooled by the time of the killing; (4) there was not enough time between the provocation and the killing for a

reasonable person's rage to cool; and (5) the victim was the person who provoked the rage. See Md. Pattern Jury Instructions 4:17.4.[5]

"Each of [these] elements is [an essential component] for a defense of mitigation based upon hot-blooded response to legally adequate provocation." Tripp v. State, 374 A.2d 384, 394 (Md. 1977), holding modified by Sparks v. State, 603 A.2d 1258 (Md. 1992). "Thus, in order for instruction regarding heat of passion to be required, evidence must be introduced from which the jury could have found each of the . . . elements." Id. (quoting Lang v. State, 250 A.2d 276, 277 (Md. 1969)). In Maryland, a defendant is entitled to a jury instruction even if the claim is "overwhelmed by evidence to the contrary" so long as there is at least "some evidence" to support each element of the claim. See Dykes v. State, 571 A.2d 1251, 1257 (Md. 1990).

Importantly, in the context of this Court's review, this standard does not simply mean that Thompson was required to prove there was some evidence of each element in order to prevail on his habeas claim. Rather, it means Thompson needed to show there was no reasonable basis for the state court to deny his Strickland claim, such that the state court's decision went beyond any possibility for fair-minded disagreement. See Valentino, 972 F.3d at 580. But there are several reasons why the post-conviction court could have reasonably denied Thompson's Strickland claim on the second prong. In particular, there is a reasonable argument that Thompson was not entitled to the provocation instruction because he could not show at least "some evidence" of each element.

---

[5] Thompson incorrectly attempts to present the requirements of the provocation defense as "factors." (See Mot. at 3 n.2).

11

First, there was a reasonable basis for the state post-conviction court to have found that there was no evidence that Beverly was the one who provoked Thompson's rage. At the state post-conviction hearing, Thompson's counsel raised the following argument:

> So, again, the issue of voluntary manslaughter for hot-blooded response to legally adequate provocation. Again, we have all this testimony that this is a bar fight. Hard to say exactly who threw the first punch, but even if Mr. Thompson threw the first punch, Ross was on top of him, Beverly pulls him off, all of this melee is going on. There was clearly plenty of evidence for that. And that certainly fits the Dykes[6] test for some evidence rule.
>
> And the rules of provocation, obviously, met them. The provocation was adequate. Calvin Ross was drunk, rowdy, on top of Terrell during the fight, had to be pulled off, there was mutual combat. . . .
>
> The killing was in the heat of passion. There was no reasonable time to cool. There was a matter of not even a minute, according to some testimony. And there was a causal connection. There wasn't any, anything intervening between the fight and the shooting. It all went down within a matter of seconds. There was no intervening cause there.
>
> So it did meet the elements of legally adequate provocation. And the jury should've heard that instruction, because it would have reduced the crime from murder to manslaughter.

(Post-Conviction Hrg. Tr. at 46:10–47:7).

Notably, although Thompson's counsel described the altercation generally as a "bar fight" and "melee," she did not raise any arguments regarding provocation by Beverly in particular. Counsel for the government picked up on this deficiency:

> And the last element, which I think is the one most fatal because, again, they have to generate some evidence as to each

---

[6] Dykes v. State, 571 A.2d 1251 (Md. 1990).

12

> and every element of the defense, is the victim was the person who provoked the rage.
>
> . . .
>
> Any counts related to Michael Beverly would not qualify. Michael Beverly didn't provoke anyone. By Mr. Martucci's own admission, and by what was argued at trial, by what was stated at sentencing, Michael Beverly was the peacekeeper. He was holding Calvin Ross back. And the testimony was he was holding his shoulders. Somebody said Calvin Ross was rowdy and jumping around. Calvin said he was drunk. Beverly never took any aggressive actions toward Thompson. There's no testimony as to that. Mr. Beverly was standing in between Calvin Ross and Terrell Thompson. . . . Beverly turned to run away, and he shot Mr. Beverly twice.

(Post-Conviction Hrg. Tr. 69:4–70:1).

In its written opinion denying his claims for ineffective assistance of counsel, the state court concluded that Thompson was not entitled to the provocation defense because there was "not a scintilla of evidence that Michael Beverly did other than remove Calvin Ross from the fight with [Thompson] and, in the instant before being shot himself, attempt to keep [Thompson] and Ross apart." (State Post-Conviction Ct. Op. & Order at 7, ECF No. 5-7). Under AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court . . . will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citations omitted); see also Roach v. Sizer, No. RWT-07-1136, 2009 WL 2151716, at *7 (D.Md. July 14, 2009) (noting that a state court determination of a factual issue is presumed correct and the presumption may be rebutted

13

only "by clear and convincing evidence" (citing 28 U.S.C. § 2254(e)(1)); Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003)).

Thompson takes exception to the post-conviction court's ruling, arguing that there was at least some evidence in the record that Beverly provoked his rage. Specifically, Thompson argues that one witness' trial testimony shows that Beverly was acting aggressively towards Thompson by "throwing punches" and getting "real close" before Thompson shot him. But upon review of this testimony in context, the Court cannot say it constitutes "clear and convincing evidence" to the contrary of the state court's determination. See Roach, 2009 WL 2151716, at *7. The witness testified that he did not know the names of the men who were shot, referring to them interchangeably as the "first guy," the "second guy," or simply "he." At one point, the witness says: "Well the guy, the second guy he was shooting he was almost tussling with him, but anybody else, no." (Sept. 21, 2009 Trial Tr. at 216:19–20, ECF No. 33-2 (emphasis added)). The witness also testified: "And as the guy got shot the guy that was shooting was walking up real close to him, almost like speed walking. He got real close again and shot him again. And at that time they were sitting there tussling and fighting, trying to push him out of the way." (Id. at 218:1–7 (emphasis added)). This testimony is obviously not a model of clarity; however, the Court notes that it could reasonably be read to mean that Thompson, not Beverly, was the one who was "tussling with" and "walking up real close" to one of the victims. As such, the Court cannot say that the state court's determination regarding Beverly's involvement in the conflict was "objectively unreasonable." Miller-El, 537 U.S. at 340.

14

Next, there was also a reasonable basis for the state post-conviction court to have determined that the element of subjective rage was not satisfied. Maryland courts have repeatedly recognized that, to be entitled to a provocation defense, "[t]he blood . . . must indeed be hot and, generally speaking, only the hot-blooded killer can attest to that." Price v. State, 570 A.2d 887, 890 (Md.Ct.Spec.App. 1990) (quoting Bartram v. State, 364 A.2d 1119, 1153 (Md.Ct.Spec.App. 1976)). In the present case, however, Thompson did not take the stand to offer testimony that he was hot-blooded at the time of the shooting. Without this critical testimony, the only evidence on which Thompson could rely was circumstantial evidence. But as government counsel explained at the post-conviction hearing:

> Now there is no evidence whatsoever that the Defendant subjectively became enraged. None whatsoever. There's no testimony from Mr. Thompson. He elected not to testify. And as Mr. Martucci told you, Mr. Thompson never told him that he was in a hot-blooded rage. Also there's no circumstantial evidence regarding, from what other witnesses said, people that observed Mr. Thompson, no evidence of his facial expressions, of his tone of voice, whether he was yelling, whether he was, you know, pacing around and fist balled and red faced, nothing like that.
>
> . . .
>
> Multiple witnesses to the shooting were asking whether they heard Mr. Thompson yell anything, whether they heard him say anything, whether, or for that matter, Mr. Ross or Mr. Beverly say anything. Nobody describes hearing Terrell Thompson yelling, shouting, doing anything that a fact-finder could hang their hat on to say he was subjectively experiencing a fit of rage. There's no evidence that generates that element of this defense.

(Post-Conviction Hrg. Tr. at 66:25–68:4).

15

For his part, Thompson points to testimony from Erica Baker, who observed that Thompson was "pacing back and forth" immediately after the shooting. As government's counsel argued at the post-conviction hearing, however, Baker also affirmatively says Thompson "didn't look upset." In light of Baker's conflicting testimony, it would have been reasonable for the state court to conclude there was not even "some evidence" that Thompson was subjectively enraged. Thompson also argues there was some evidence he was subjectively enraged because the altercation was particularly embarrassing for him, citing to trial testimony that Thompson was on the ground during most of the fight and bystanders were kicking him. But the post-conviction court could have reasonably found that this evidence does not support a finding of subjective rage—in fact, this testimony could give rise to an inference that Thompson was scared, submissive, or disoriented, for example. Moreover, any suggestion that Thompson was subjectively enraged because he felt embarrassed is not supported by the record, as testimony about Thompson's own state of mind at the time of the shooting would have had to come from Thompson himself. Once again, because there is a reasonable argument that there was not even "some evidence" of Thompson's subjective rage, the Court cannot say there was no reasonable basis for the post-conviction court to deny Thompson's ineffective assistance of counsel claim.

At bottom, Thompson criticizes the Court for "evidently [finding] that there was not a single piece of evidence to support two of the hot[-]blooded provocation jury instruction factors: 1.) Petitioner's subjective rage; and 2.) the fact that victim Michael Beverly (in addition to victim Calvin Ross) provoked Petitioner's rage." (Mot. at 2). Thompson argues that the Court should have instead considered "whether there is <u>any evidence at all</u> to

16

support" the jury instruction. (Id. at 5 (citation omitted)). As such, Thompson asserts that the Court erred by "focus[ing] on the facts that weighed against [each element] in the totality, which is not what the 'some evidence' standard calls for." (Id.). Thompson concludes that he is entitled to habeas relief because "the record itself support[s] the fact that 'some evidence' exists" for each element. (Id. at 6).

Thompson is incorrect. The Court's job here was not to make its own factual findings or apply the "some evidence" standard to the evidence in the record—it was to determine whether there was any reasonable basis for the post-conviction court to have denied Thompson's ineffective assistance of counsel claim. Thompson effectively asks the Court to substitute its judgment for that of the state post-conviction court. Critically, however, the Court's role in reviewing Thompson's habeas petition was not to independently review the merits of his claims, but rather to "review[] the relevant state court ruling[s] on the claims." Rever v. Acevedo, 590 F.3d 533, 536 (7th Cir. 2010). In other words, the Court's obligation was to focus on the "state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156 (E.D.Va. 1997).

The Court did exactly that in its prior decision and found that Thompson is not entitled to habeas relief because he cannot show that there was no reasonable basis for the post-conviction court to deny his ineffective assistance claim. The Supreme Court has noted that "[i]f this standard [seems] difficult to meet, that is because it was meant to be." Harrington, 562 U.S. at 103. This is because "Section 2254(d) codifies the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems, not a

17

substitute for ordinary error correction through appeal." Valentino, 972 F.3d at 581 (internal quotation marks and citation omitted).

Nothing in Thompson's Motion for Reconsideration demonstrates that this Court's previous determination was erroneous, nor is the Court persuaded by any other arguments Thompson raises. Accordingly, the Court declines to reconsider its dismissal of Thompson's habeas petition.

### III.  CONCLUSION

For the foregoing reasons, the Court will deny Petitioner Terrell L. Thompson's Motion for Reconsideration (ECF No. 40). A separate Order follows.

Entered this 30th day of July, 2021.

/s/
George L. Russell, III
United States District Judge